UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:17-cr-00304-BLW-1 |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| DAVID WILLIAM FISCHER, | |
| Defendant. | |

Pending before the Court is Defendant David William Fischer's ("Fischer") Motion to Suppress. Dkt. 14. Fischer alleges that law enforcement officers violated his Fourth Amendment rights to be free from unreasonable searches and seizures. He seeks to exclude "evidence seized from the … hotel room" he was staying in. Dkt. 14-1 at 11. This evidence includes: (1) a large bundle of cash in the amount of $3,275, (2) two backpacks[1], (3) a clear shard of what turned out to be methamphetamine recovered from the bathroom toilet, and (4) an empty plastic baggy from the bathroom trashcan. Additionally, Fischer seeks to exclude the contents of the locked backpacks, including: (5) approximately forty-four grams of methamphetamine, (6) oxycodone, (7) marijuana,

---

[1] At the time of the initial protective sweep, both backpacks were locked.

**MEMORANDUM DECISION AND ORDER - 1**

and (8) two Samsung cellular telephones. For the following reasons, the Court DENIES Fischer's motion.

## FACTUAL FINDINGS

On September 26, 2017, law enforcement officers converged on the Red Lion Hotel in Boise, Idaho to arrest him on a parole violation warrant. Dkt. 14-1 at 1. Fischer concedes that prior to the search, "law enforcement was aware … that … [he] was on parole for aggravated assault … and had a history of drug offenses." Dkt 14-1 at 10.

Once they arrived on scene, the officers observed Fischer exiting Room 208 and removing items from a 2002 Ford Taurus. After surveilling Fischer for a period of time, the officers approached Room 208 and initiated a "contain and call out," thereby announcing themselves as law enforcement officers. Fischer refused to open the door and subsequently barricaded himself in the room by moving a heavy dresser in front of the door. The officers contacted Fischer by phone. Fischer was upset and continually disconnected the calls. While they were on the phone with Fischer, the officers heard movement in the room, including a toilet flushing and a barking dog. After an hour-long standoff, Fischer surrendered to the officers and was placed into custody at 2:35 PM.

After taking Fischer into custody, Officer Joshua Thorndyke entered Room 208 and discovered another occupant in the room, Tymilynn Uhl. Ms. Uhl had a large dog with her. Officer Thorndyke commanded Ms. Uhl to put her dog in the bathroom and exit the room with her hands up. Ms. Uhl complied. With the dog safely locked in the bathroom, law enforcement began a protective sweep of the bedroom area. During the

bedroom sweep, the officers discovered a large bundle of cash in the amount of $3,275 and two locked backpacks. The officers then turned to the bathroom. A K-9 officer on the scene retrieved the dog from the bathroom. From the doorway of the bathroom area, Officer Thorndyke was able to see a wet and empty clear plastic baggy in the bathroom trashcan and a clear shard in the toilet bowl. The shard subsequently tested positive for methamphetamine.

After the sweep, the officers secured Room 208 while Officer Thorndyke left to obtain a warrant. Rather than remaining outside of Room 208 while Officer Thorndyke secured the warrant however, the officers repeatedly exited and entered the Room. At approximately 4:09 PM, the officers on the scene interviewed three witnesses: Ms. Uhl, who was in the hotel room with Fischer; Juliet Summers, who rented the hotel room for Fischer; and, Sheryll Wilson, who owned the 2002 Ford Taurus that Fischer was borrowing at the time he was arrested. Ms. Summers and Ms. Wilson had been called to the scene by the officers.

During her interview with the officers on scene, Ms. Summers consented to a search of Room 208 at 4:15 PM. In doing so however, she told the law enforcement officers that she (1) rented the room solely for Mr. Fischer, (2) had never been in the hotel room, (3) had no intention of going in the room, and (4) did not have any belongings in the room. Ms. Wilson consented to a search of her car. An officer retrieved three sets of keys from Room 208. Ms. Wilson identified one of the key sets as belonging to her. The officers then used the key to open Ms. Wilson's Ford Taurus at

approximately 4:21 PM.  In the trunk of the car officers discovered a Charter Arms pistol box that contained a cigarette box with thirteen rounds of ammunition in it.  Officers also discovered a pistol holster in the trunk.

Four hours after Fischer was arrested, law enforcement obtained a search warrant for Room 208.  Using a key found in the Room, law enforcement opened the two locked backpacks.  The first backpack contained two handguns and about forty-four grams of methamphetamine.  The second backpack contained 1.1 grams of methamphetamine, along with oxycodone, marijuana, and smoking pipes.

Fischer was indicted for possession of methamphetamine with intent to distribute under 21 U.S.C. § 841, possession of firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c), and possession of a firearm as a felon under 18 U.S.C. § 922(g).  On March 20, 2018, Fischer filed his motion to suppress.  He seeks to suppress only "evidence seized from … [the] hotel room."  Dkt. 14-1 at 11.  The Court will not evaluate the search of Ms. Wilson's car and the subsequent seizure of the pistol holster and Charter Arms pistol box containing ammunition.

## LEGAL STANDARDS

1.    **Search-Incident to Arrest, Protective Sweep, and Plain View Doctrine.**

The Fourth Amendment protects citizens from searches and seizures that are unreasonable.  *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).  Reasonableness "depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself," *id.*, and weighs the intrusion upon

individual privacy interests against the promotion of legitimate governmental interests. *See Maryland v. Buie*, 494 U.S. 325, 331 (1990). The Supreme Court has recognized a need for law enforcement to adequately protect themselves during searches of a home where a suspect may hide and readily access a weapon, *Buie*, 494 U.S. at 333-34, thereby creating a limited exception to the warrant requirement. *See United States v. Lemus*, 582 F.3d 958, 961 (9th Cir. 2009).

"A search incident to a lawful arrest is a well-established exception to the Fourth Amendment's warrant requirement. This exception allows an officer to search the arrestee's person and the area within his immediate control, defined as the area from within which he might gain possession of a weapon or destructible evidence." *United States v. Cook*, 797 F.3d 713, 717 (9th Cir. 2015). Concern for the officer's safety justifies a search without probable cause or reasonable suspicion of areas including closets and small places where a readily accessible weapon may be hidden. *Lemus*, 582 F.3d at 962. Furthermore, officers may conduct a protective sweep of adjoining areas if there are articulable facts that would reasonably lead "a prudent officer in believing that the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." *Id.* (quoting *Buie*, 494 U.S. at 334). A protective sweep "may extend only to a cursory inspection of those spaces where a person may be found," and should last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Buie*, 494 U.S. at 335.

2. **Scope of the Warrant**

In addition to their protective sweep of Room 208, the officers also secured a search warrant from a state magistrate. Government Hearing Exh. 2.1. "It is axiomatic that if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant." *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984); *see also United States v. Giberson*, 527 F.3d 882, 887-88 (9th Cir. 2008) (paraphrasing *Gomez-Soto*'s holding as "to search a container, it must be reasonable to expect that the items enumerated in the search warrant could be found therein").

## ANALYSIS

1. **Protective Sweep of the Bedroom**

After Fischer exited Room 208, the officers on scene were entitled to "a cursory inspection of those spaces where a person may be found." *Buie*, 494 U.S. at 335. Even though Fischer was arrested in the doorway, the bedroom area of the hotel room "immediately adjoined" the location of Fischer's arrest, therefore making it subject to a protective sweep. *See Lemus*, 582 F.3d at 964.

Once Officer Thorndyke entered the bedroom, he saw (1) a large bundle of cash on the bed and (2) two locked backpacks in plain view. With respect to the large bundle of cash, the Court finds that it is admissible pursuant to the plain view doctrine because (1) Officer Thorndyke was lawfully allowed to conduct a protective sweep of the

bedroom area and (2) it was immediately apparent that the large bundle of cash was the proceeds of illicit activity. *See United States v. Nam*, 1 Fed. Appx. 738, 739 (9th Cir. 2001) (finding that a large amount of cash was properly subject to seizure under the plain view doctrine); *see also United States v. $83,310.78 U.S. Currency*, 851 F.2d 1231, 1236 (9th Cir. 1988) (carrying a large sum of cash is "strong evidence" of a connection to illegal drug activity).[2]

## 2. Entry Into the Bathroom

The officers' subsequent entry into the bathroom is also constitutional under the Fourth Amendment. Even if the Court accepts Fischer's argument that the officers lacked an articulable basis to enter the bathroom, the officers were entitled to remove the dog from the bathroom pursuant to the community caretaking exception to the warrant requirement. *See Cady v. Dombrowski*, 413 U.S. 433, 441 (1973); *cf. United States v. Erickson*, 991 F.2d 529, 531-32 (9th Cir. 1993). Once the K-9 officer opened the door to remove the dog, the trashcan containing the wet plastic baggy was immediately next to the door and within plain view from the doorway. Gov't Hearing Exh. 3. Likewise, the shard of methamphetamine was within plain view of an officer standing in the doorway. *Id.* As such, both pieces of evidence come within the plain view exception and cannot be excluded because they were within view of the officers standing in the doorway.

---

[2] Because it was not "immediately apparent" that the backpacks were of an incriminating nature, they do not come within the plain view exception. *See Horton v. California*, 496 U.S. 128, 136 (1990).

### 3. Contents of the Backpacks

The sole remaining question is whether the officers were entitled to open the locked backpacks. The Government makes two arguments. First, the Government argues pursuant to the inevitable discovery doctrine that the backpacks, having been disclaimed by Ms. Summers and Fischer, would have been turned over to the officers as abandoned property.[3] Dkt. 18 at 13 n.10. Second, the Government argues that the warrant covered the contents of the backpacks.

The Government's second argument is obviously correct and the Court will therefore not address the first. The Court has reviewed the warrant and finds that even if it excised items that the Defendant argues were the product of an unlawful search, the warrant was still validly issued. Furthermore, the Defendant has not argued that the warrant was invalid.

The warrant was sufficient to permit a search of the backpacks. The search warrant ordered officers to search Room 208 of the Red Lion Hotel for, among other things, "[c]ontrolled substances" and "[i]ndicia of ownership and /or evidence of occupancy of the hotel room." Gov't Hearing Exh. 2.1 at 1-2. As such, it was logical for them to open and search the contents of the two locked backpacks. Although the warrant did not command the officers to search the backpacks, the Ninth Circuit has repeatedly

---

[3] Because the warrant in this case entitled the police to search the contents of the backpack, the Court will not take the Government's invitation to make law based on a dissenting opinion by Judge Ikuta. That issue remains for another day.

made clear that "if a warrant sufficiently describes the premises to be searched, this will justify a search of the personal effects therein belonging to the person occupying the premises if those effects might contain the items described in the warrant." *Gomez-Soto*, 723 F.2d at 654. Thus, the officers' search of Fischer's backpacks did not violate the Fourth Amendment.

## ORDER

Pursuant to the foregoing, it is hereby ORDERED that Fischer's Motion to Suppress (Dkt. 14) is DENIED.

DATED: January 10, 2019

B. Lynn Winmill
U.S. District Court Judge